# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| In the Matter of: } | |
| STEVEN R. GORDON } | CASE NO. 07-80443-JAC-13 |
| SSN: XXX-XX-7590 } | |
| } | CHAPTER 13 |
| Debtor(s). } | |
| | |
| STEVEN R. GORDON } | A.P. No. 07-80040-JAC-13 |
| } | |
| Plaintiff(s), } | |
| v. } | |
| } | |
| HENDRICKS-PATTON COMPANY, INC. } | |
| a corporation, } | |
| } | |
| Defendant(s). } | |

**MEMORANDUM OPINION**

The debtor, Steven Gordon, filed this adversary proceeding against Hendricks-Patton Company, Inc. ("Hendricks-Patton") alleging a violation of the Truth in Lending Act, 15 U.S.C. § 1638. Gordon asserts a claim against Hendricks-Patton under the TILA based on the creditor's failure to disclose the annual percentage rate on a retail sales contract the parties executed when the debtor purchased furniture from Hendricks-Patton in October of 2006.

On January 23, 2008, the Court held a hearing on the parties' respective cross-motions for summary judgment. At the hearing, Hendricks-Patton did not deny that the contract failed to include the annual percentage rate. Rather, Hendricks-Patton argued that the failure to disclose was not intentional and resulted from a bona fide error despite procedures that were in place designed to avoid such errors. Gordon argued that the bona fide error defense does not apply.

The Court required the parties to submit briefs on the bona fide error defense and gave Hendricks-Patton until mid-February to file its brief and Gordon until the end of February to respond. After requesting a one week continuance for filing its brief, Hendricks-Patton submitted same on February 22, 2008. Gordon missed his deadline for filing a response brief, but subsequently requested additional time to do so. After receiving Gordon's brief, the Court entered a supplemental order requiring Hendricks-Patton to file an amended affidavit to explain in detail the procedures, if any, in place designed to prevent errors such as the one that occurred in this case. The order further provided that Gordon would have five days to respond to the affidavit after same was filed. On April 4, 2008, Hendricks-Patton filed a supplemental motion for summary judgment supported by the amended affidavit of R.B. Patton, III, the president and an owner of Hendricks-Patton. Gordon has not filed a response to same. The case is now before the Court on the parties' respective motions for summary judgment, the parties' pleadings and exhibits, and the affidavits of R.B. Patton, III ("Patton").

Pursuant to Federal Rule of Civil Procedure 56(c) and Federal Rule of Bankruptcy Procedure 7056, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Gray v. Manklow (In re Optical Tech., Inc.),* 246 F.3d 1332, 1334 (11th Cir. 2001); and *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir. 1993). "In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000). Where both parties seek summary judgment, the court must consider

2

each motion independently and apply the applicable standards to each motion to determine whether summary judgment is appropriate under either motion. *Smith v. Fendley (In re Allied Sign Co., Inc.)*, 280 B.R. 694 (Bankr. S.D. Ala. 2001). Upon due consideration of the pleadings and respective submissions of the parties, the Court finds that there is no genuine issue of material fact in the present case and that Hendricks-Patton is entitled to judgment as a matter of law based on the bona fide error defense.

## FACTS AND ARGUMENTS

On October 7, 2006, Gordon and his wife purchased a sofa, two end tables, a coffee table and a chair and ottoman from Hendricks-Patton for a total purchase price of $4,814.53. Hendricks-Patton financed the credit sales transaction. The sale and financing arrangement were documented by a retail sales contract signed by Gordon, his wife, and an agent of the seller. The contract required Gordon to pay Hendricks-Patton eighteen monthly installment payments of $257.49 with the first payment due in November of 2006. The installment contract recites that the terms of the credit sale were based on a cash price of $4,814.53 and a down payment of $914.53. Although the contract disclosed the finance charge of $734.82 and provided that total payments would equal $4,634.82, the contract failed to disclose the annual percentage rate charged which was approximately 22%. According to Patton's affidavit, he was the salesman who handled the sale. He admits that he inadvertently left the annual percentage rate off of the contract although he maintains that he verbally informed Gordon of the rate charged.

Gordon argues that Hendricks-Patton's failure to disclose the annual percentage rate triggers the statutory penalties required by 15 U.S.C. § 1640(a) in the amount of twice the finance charge.

3

Hendricks-Patton counters that the omission was a bona fide error for which it should not be held liable pursuant to the bona fide error exception found in 15 U.S.C. § 1640(c).

Hendricks-Patton maintains that there were sufficient procedures in place to catch such errors, but those procedures failed in this instance because the debtor failed to pay the full down payment of $914.53 listed in the contract. According to Patton's affidavit, Hendricks-Patton's general business practice forbids it from allowing customers to remove furniture from the store until the full down payment for same has been paid. Patton explains that the balance due, applicable finance charge, and monthly payments cannot be accurately calculated on the contract until the down payment has been paid. Once a contract is completed, the contract is turned over to Hendricks-Patton's bookkeeper, who is also an owner of Hendricks-Patton, for review by hand and electronically for omissions and errors. Had this contract been turned over to the bookkeeper for review, Patton asserts that the error in the contract would have been caught. In this instance, however, Patton allowed Gordon to take immediate possession of the furniture even though Gordon had not paid the full down payment and then Patton failed to immediately turnover over the contract to the bookkeeper for review because he was waiting for Gordon to return with the remainder of the down payment.

The down payment or deposit required for the furniture purchased by Gordon was $914.53, but the debtor was only able to pay $460.00 on the date of purchase. Because Gordon had previously been a good customer, having financed furniture with Hendricks-Patton five times since the year 2000 and having previously satisfied his obligations under each contract, Hendricks-Patton allowed Gordon to take possession of the furniture that was in stock even though he had not paid the full down payment. Patton further explained that because Gordon's wife really wanted the

4

furniture that day, he allowed the debtor and his wife to take immediate possession of the furniture with the understanding that Gordon would return in a few days to pay the balance owed on the down payment. So despite Hendricks-Patton's general business practice which forbade it from allowing customers to remove furniture from the store until the down payment had been paid, Patton allowed the Gordons to execute the contract at issue and take immediate possession of the furniture that was in stock. Hendricks-Patton had the debtor and his wife sign the contract and explained to the debtor that they would receive a copy of same once the debtor paid the remainder of the down payment.[1]

In December of 2006, Gordon returned to Hendricks-Patton to pick up the special order items, the chair and ottoman, that the store had ordered for the Gordons. At that time, Gordon paid an additional $200 toward the down payment. Hendricks-Patton again allowed the debtor to take possession of the special order items even though the debtor still had not paid the full down payment and had not begun making the monthly installment payments due under the contract. Gordon made no further payments to Hendricks-Patton and on February 16, 2007 filed for bankruptcy relief.

Hendricks-Patton argues that its failure to disclose the annual percentage rate on the October 2006 contract was merely a clerical error that would have been caught had the debtor paid the full down payment when the parties executed the contract or subsequently brought in the remaining balance owed on the down payment. Hendricks-Patton suggests that the error occurred as a result of the circumstances surrounding the execution of the contract and the Gordons' desire to take immediate possession of the furniture without paying the full down payment for same.

Patton completed the form contract when the debtor made the purchase that is the subject of this litigation. Patton states in his affidavit that he inadvertently left off the annual percentage rate

---

[1] See Affidavit of R.B. Patton, III.

when he completed the form. According to Patton's affidavit, the mistake would have been caught by Hendricks-Patton' bookkeeper but for the fact that Patton allowed the debtor to take possession of the furniture before he paid the full down payment. Patton explained that Hendricks-Patton has the following procedures in place to catch any error that may occur in their sales contracts:

> Once a salesperson closes a sale and completes the contract, he goes over the same with the customer. Once the customer has agreed to the terms, the salesperson places the contract in a bin on our bookkeeper's desk. Our bookkeeper, Mrs. Maynard Layman, who is also an owner of Hendrix-Patton [sic], reviews each and every contract. She checks the numbers both by hand and electronically. Mrs. Layman checks for omissions, mathematical errors, the finance charge, the annual percentage rate applied, and the accuracy of the taxes charged. In short, Mrs. Layman completes the contract all over again. If any mistakes are found, Mrs. Layman corrects the same and advises the customer of the same. The customer would either initial the changes or a new contract would be done and the customer would sign the same.[2]

Patton explains that in this instance he did not immediately place the contract in the bin for Layman's review because he was waiting on Gordon to return with the remainder of the down payment. Had Gordon brought in the remaining down payment, the contract would have been sent to the bookkeeper for review, but this never happened because Gordon failed to bring in the down payment. Hendricks-Patton insists that the error would have been caught once Gordon brought in the down payment.

## CONCLUSIONS OF LAW

Gordon argues first that Regulation Z, 12 C.F.R. § 226.17 requires written disclosures and any oral disclosure of the annual percentage rate charged by Hendricks-Patton violated Regulation Z. The Court agrees and finds the fact that Hendricks-Patton orally informed Gordon of the rate charged does not satisfy the requirements of the TILA.

---

[2] See Affidavit of R. B. Patton, III, dated April 3, 2008.

6

Gordon has not alleged that Hendricks-Patton intentionally mislead him and argues that Hendricks-Patton incorrectly limits the application of the civil liability provisions of the TILA to misleading disclosures. Although the Court agrees with Gordon's argument that the TILA is a strict liability statute imposing the burden upon a creditor to disclose certain required information regardless of whether such failure to disclose is misleading or not, the Court recognizes that lack of intent is an element of the bona fide error defense. Defendant, Hendricks-Patton, argues pursuant to 15 U.S.C. § 1640(c) that it should not be held liable for any damages because the omission of the annual percentage rate was not intentional and resulted from a bona fide error on the part of its employee. Title 15, § 1640(c) provides as follows:

> A creditor or assignee may not be held liable in any action brought under this section or § 1635 of this title for a violation of this subchapter if the creditor shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Examples of a bona fide error include, but are not limited to, clerical, calculation, computer malfunction, and programming and printing errors, except that an error or legal judgment with respect to a person's obligations under this subchapter is not a bona fide error.

Gordon argues that the case of *McGowan v. King, Inc.*, 569 F.2d 845 (5th Cir. 1978)[3] mandates strict liability, disposes of Hendricks-Patton's claimed lack of intent as irrelevant, and refuses to support a claimed bona fide error defense without proof of reasonable procedures. In *McGowan,* the Fifth Circuit held that a creditor's failure to include the term "deferred payment price" in a retail installment contract violated the requirements of the TILA and the creditor's reliance on counsel to draft a contract and disclosure forms in compliance with the act was not a

---

[3] Pursuant to *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206 (11th Cir.1981) (en banc), decisions of the former Fifth Circuit entered prior to the split establishing the Eleventh Circuit are binding on the Eleventh Circuit.

7

defense. In *McGowan,* the plaintiff purchased clothing from the defendant, made a down payment, and executed a retail installment contract and security agreement with a detachable disclosure statement. The defendant had obtained the form for the contract and disclosure statement from a loan broker who regularly financed the defendant's installment sales. In turn, the loan broker had requested a law firm to prepare the form in accordance with the truth in lending laws. Nevertheless, the disclosure statement prepared by the law firm failed to use the term "deferred payment price" in violation of the TILA which requires disclosure of the sum of the cash price, other charges, and finance charge, using the term "deferred payment price." Following a trial, the district court, among other things, found that the creditor's reliance on skilled and competent counsel to prepare the forms would constitute a good faith defense under 15 U.S.C. § 1640(c).

The Eleventh Circuit reversed and explained as follows:

> King next argues that even if it did violate Regulation Z, its good faith attempt to comply with the law by relying on counsel in drafting its contract and disclosure forms brings it within the unintentional, bona fide error defense of 15 U.S.C.A. s 1640(c). . . . King misconceives the nature of this defense. Section 1640(c) does not excuse unintentional violations that result from mistaken legal conclusions concerning the requirements of the Act and Regulation Z; rather, the defense is only available for clerical errors which occur despite a system for correcting them. . . . . The omission of the "deferred payment price" from King's standard disclosure form was not the result of a clerical error, so s 1640(c) is inapplicable. (citations omitted).[4]

Although *McGowan* clearly holds that a creditor's good faith attempt to comply with the TILA by relying on legal counsel does not satisfy the bona fide error defense under § 1640(c), the facts of the case before the Court are clearly distinguishable from those in *McGowan*. Here, Hendricks-Patton does not argue that the error resulted from a mistaken legal conclusion concerning

---

[4] *McGowan v. King, Inc.,* 569 F.2d 845, 849 (5th Cir.1978).

the requirements of the TILA as the plaintiff in *McGowan* argued. The form used by Hendricks-Patton clearly provided a space for the creditor to disclose the annual percentage rate charged.

Instead, Hendricks-Patton asserts that its failure to include the annual percentage rate was an unintentional clerical error that occurred despite procedures that were in place which were reasonably adapted to avoid making such errors. The error that occurred in this case is more in line with the type of clerical error that occurred in the case of *Groat v. Carlson (In re Groat)*, 369 B.R. 413 (8th Cir. BAP 2007), in which the court concluded that an obvious typographical error which listed the incorrect year in the deadline date for rescission was a bona fide error and did not constitute a violation of the TILA where the procedures in place for correcting such errors were reasonably adapted to avoid such errors. The lender's attorney involved in the loan transaction submitted an affidavit in which he described the procedures in his office under which the attorney's assistant, who was trained in the preparation of such documents, prepared the loan documents. The attorney would then proof read the documents before the borrower signed same. The court determined that these procedures were reasonably adapted to avoid the error which occurred in that case. Similarly, in this case, it is Hendricks-Patton's procedure is to have its employees, who have been trained to complete the contract form in question, complete the contracts and review same with customers.[5] Once the customer has agreed to the terms, the contract is reviewed by Hendricks-Patton's bookkeeper who is also a part owner of the company. If the bookkeeper discovers any errors or omissions the bookkeeper corrects same and has the customer initial the corrections or sign a new contract. The Court finds that this procedure is reasonably adapted to avoid the errors which

---

[5] See the affidavits of R. B. Patton, III.

9

occurred in this case. The procedures failed in this instances under the unusual circumstances of this case.

The Court further finds that the facts of this case are distinguishable from those relied upon by Gordon in the case of *Yarnall v. Four Aces Emporium, Inc. (In re Boganski)*, 322 B.R. 422 (9th Cir. BAP 2005) in which the court found that a lender was not entitled to the bona fide error defense for an inaccurate disclosure that resulted when, following the change in term of a payday loan, the creditor's employee did not electronically recalculate the figures from scratch and erroneously disclosed an annual percentage rate that was only half of the rate in fact charged. Pre-petition, the debtor had applied for and obtained a payday loan with a set two-week term. Subsequently, the debtor requested the term be extended to one month and the creditor's employee reprinted a form consumer loan agreement with the later due date reflecting a $50 finance charge and an annual percentage rate charge of 121.67%. Because the finance charge for a one-month term loan was actually 20% or $100, the employee handwrote the change for the finance charge, but left the annual percentage rate unchanged. As a result, the annual percentage rate was improperly calculated and should have been 243.33%. Company protocol required the employee to tear up the contract and start again. Instead of electronically recalculating the figures, the employee manually modified the form. The error was compounded by the fact that the owner testified that he reviewed the loan documents the day after the loan was funded and caught the error but did nothing to cure the problem. Under these circumstances, the court concluded that the creditor made no showing that it had a procedure in place reasonably adapted to prevent the error that occurred. Although the *Boganski* court refused to apply the bona fide error defense finding in part that the record showed that the error resulted from the lender's failure to follow its own prescribed protocol, the Court

10

distinguishes this case finding that the procedures developed by Hendricks-Patton were reasonably adapted to have prevented the error that occurred. The procedures failed in this instance under the unusual circumstances surrounding the transaction.

It was against company policy to allow Gordon to take possession of the furniture without making the full down payment required, but because the debtor had always been a good customer and because the debtor's wife really wanted the furniture that day, Patton relented and allowed Gordon to take possession of the furniture immediately. The Court rejects Hendricks-Patton's argument that the contract never became legally binding because Gordon never brought in the remainder of the down payment as promised, but finds that the procedures that were in place to have discovered the error would have been effective had Gordon not taken immediate possession of the furniture before the down payment listed on the contract was paid. The Court recognizes that the "purpose of TILA is to prevent ordinary consumers from being deceived about how much interest they are being charged, and 'should be liberally construed to protect borrowers," but finds in this instance that application of the bona fide error defense is appropriate under the specific circumstances of this case.[6] Gordon's failure to return to the store to satisfy the down payment prevented or inhibited Hendricks-Patton from following its own standards of procedure which were designed to prevent the error which occurred in this case.

---

[6] *Yarnall v. Four Aces Emporium, Inc. (In re Boganski)*, 322 B.R. 422, 426 (9th Cir. BAP 2005).

11

A separate order will be entered consistent with this opinion.

Dated: April 16, 2008

        /s/ Jack Caddell
        Jack Caddell
        U.S. Bankruptcy Judge

JAC/mhb
xc:    Debtor(s)
       A. Wilson Webb, attorney for plaintiff(s)
       William J. Gibbons, Jr., attorney for defendant(s)
       trustee